UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT ABBOTT,

        Plaintiff,

v.                            Case No. 3:19-cv-642-J-39MCR

CORIZON, LLC,

        Defendant.

_____

**<u>ORDER</u>**

**I. Status**

Plaintiff, Robert Abbott, an inmate of the Florida Department of Corrections (FDOC), is proceeding on an amended complaint for violation of civil rights (Doc. 8; Compl.) against Corizon, LLC, for the alleged deliberate indifference to his serious medical needs. Corizon seeks dismissal of the action (Doc. 22; Motion) for Plaintiff's failure to state a claim and failure to exhaust his administrative remedies. <u>See</u> Motion at 1, 11. Plaintiff responded to the motion (Doc. 26; Resp.), and Corizon, with the Court's permission, filed a reply (Doc. 29; Reply).

**II. Motion to Dismiss Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Gill, 2019 WL 5304078, at *2 (quoting Iqbal, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff. See Iqbal, 556 U.S. at 678.

### III. Complaint Allegations

Plaintiff alleges he broke his wrist when he fell on September 22, 2015, at Union Correctional Institution (UCI). See Compl. at 4-5. The UCI doctor, Perez, wanted to transport Plaintiff to the emergency room, but the Regional Medical Director of Corizon issued an "alternate treatment plan," which consisted of "an ace bandage and sling" and referral to an orthopedic surgeon. Id. at 5.

2

Plaintiff alleges Dr. Perez told him Corizon does not consider broken bones an emergency and will not, therefore, approve emergency transport. Id.

Plaintiff alleges an orthopedic surgeon recommended surgery, which Corizon unnecessarily delayed for six months. Id. at 9, 11. Plaintiff alleges his wrist is now deformed, causing chronic aching and decreased function of his hand. Id. at 7. He says his injury was further exacerbated by his advanced age.[1] Id. at 9. Plaintiff asserts Corizon's "state-wide cost-containment policies" caused the delay in providing the treatment he needed, and the medication he received was "inadequate" to address his pain while he awaited surgery. Id. at 6.[2] Plaintiff seeks compensatory and punitive damages. Id. at 8, 11.

### IV. Analysis & Conclusions

#### A. Exhaustion

First, Corizon asserts Plaintiff did not exhaust his administrative remedies. See Motion at 14; Reply at 1. Plaintiff contests this assertion. See Resp. at 17-18.

---

[1] Plaintiff's date of birth is January 1, 1944. See FDOC website, Offender Search, available at http://www.dc.state.fl.us/OffenderSearch/Search.aspx (last visited September 9, 2020).

[2] Plaintiff also alleges his knee and hip fractures went untreated, see Compl. at 7-8, though it is unclear whether those injuries are related to the fall that is the subject of this complaint.

The PLRA provides, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones v. Bock, 549 U.S. 199, 211 (2007). While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford v. Ngo, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Nevertheless, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." See Jones, 549 U.S. at 216.

Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. Woodford, 548 U.S. at 93. As such, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id. Generally, to properly exhaust administrative remedies, a Florida prisoner must complete a three-step process, as fully set forth in the Florida Administrative Code (FAC), by first filing an informal grievance to the institution, then a formal grievance to the institution, and then an appeal to the Office of the Secretary of the FDOC. See Fla. Admin. Code r. 33-103.005 through 33-103.007.

See also Dimanche v. Brown, 783 F.3d 1204, 1211 (11th Cir. 2015). However, an inmate may bypass the informal-grievance-step and proceed directly to the formal-grievance-step when grieving a medical issue. See Fla. Admin. Code r. 33-103.005(1).

When confronted with an exhaustion defense, courts in the Eleventh Circuit employ a two-step process:

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal citations omitted) (citing Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008)). Because failure-to-exhaust is an affirmative defense, the defendant bears the burden. Turner, 541 F.3d at 1082.

In its motion, Corizon asserts, "According to the record, [Plaintiff] never filed a grievance regarding his care during the time Corizon could meaningfully address his complaints." See Motion at 14. Corizon provides no records to substantiate its assertion, however. Rather, in its reply, Corizon argues the records Plaintiff provides with his response "make clear that [he] did not exhaust the grievance procedure." See Reply at 1.

Plaintiff contends in his response to Corizon's motion that he filed three grievances—one at each step of the process: an informal grievance to Dr. Perez; a formal grievance to the Warden's office; and an appeal to the Secretary's office. See Resp. at 17.

Under the first step of the Turner analysis, the Court must accept as true that Plaintiff filed a grievance at each step of the process, as he asserts. See Turner, 541 F.3d at 1082-83. If Plaintiff timely and properly filed an informal grievance, a formal grievance, and an appeal to the Secretary's office, complaining about the lack of treatment he received for injuries he sustained when he fell, then he exhausted his administrative remedies. In other words, Plaintiff's allegations do not demonstrate his failure to exhaust. See id. Thus, Corizon is not entitled to dismissal at the first step.

At the second step of the Turner analysis, the Court "make[s] factual findings on the disputed issues of fact." Id. See also Bryant, 530 F.3d at 1376 (holding district courts must act as factfinders when ruling on matters in abatement, such as exhaustion). Plaintiff and Corizon dispute only whether Plaintiff submitted grievances related to the September 22, 2015 incident. Corizon asserts, "[Plaintiff] filed no grievances during the time Corizon provided medical services, but only filed grievances in 2011 and 2019." See Motion at 2. On the other hand, Plaintiff maintains he did.

The Court need not make a credibility determination because Plaintiff offers copies of the grievances he submitted (Docs. 26-1, 26-2; Pl. Ex. A, B). On September 29, 2015, Plaintiff submitted an informal grievance to the Warden's office. See Pl. Ex. A at 2. Plaintiff complained the pain medication he received was inadequate, and he asked the Warden to direct staff to "give [him] proper treatment."[3] Id. The request was denied on October 7, 2015. Id. On October 16, 2015, Plaintiff submitted an appeal to the Office of the Secretary, asking that he be provided "proper treatment and adequate pain medication." See Pl. Ex. B at 2. Plaintiff contends the Secretary's office did not respond. See Resp. at 18.

By submitting an informal grievance to the Warden's office,[4] Plaintiff properly initiated the grievance process. Plaintiff does not demonstrate he then filed a formal grievance to the Warden's

---

[3] Plaintiff does not explicitly mention an orthopedist or surgery, but it is clear he is seeking treatment for the injuries he sustained when he fell on September 22, 2015, at UCI. Thus, he put the institution on notice of the nature of his complaint.

[4] Plaintiff alleges in his complaint and his response that he submitted a formal grievance to the Warden's office. See Compl. at 13-14; Resp. at 17. Plaintiff's use of the term "formal" is a mistake. In his complaint, Plaintiff acknowledges he completed form DC6-236 to initiate the grievance process, and the exhibit he provides verifies he submitted a grievance on form DC6-236. Form DC6-236 is one an inmate must use to submit an informal grievance, not a formal grievance. See Ex. A at 2. See also Fla. Admin. Code r. 33-103.005(2) ("When submitting an informal grievance, the inmate shall use Form DC6-236, Inmate Request.").

office before he submitted an appeal to the Office of the Secretary. However, he does not have the burden to show he properly exhausted his claims—Corizon does. Corizon provides no evidence, such as grievance logs or a declaration from a UCI representative, showing Plaintiff failed to properly and timely exhaust his administrative remedies. And its contention that Plaintiff's evidence "make[s] clear" that Plaintiff failed to exhaust his administrative remedies is inaccurate. See Reply at 1.

While Plaintiff does not provide evidence showing he filed a formal grievance to the Warden's office, he does provide a copy of the appeal he allegedly submitted to the Office of the Secretary. See Pl. Ex. B at 2. Even if he impermissibly bypassed the formal-grievance step, Plaintiff alleges the Office of the Secretary did not respond to his appeal. See Compl. at 14; Resp. at 18. If that is true, any procedural deficiencies the Secretary's office could have raised may have been waived because the FAC provides, "expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process." See Fla. Admin. Code r. 33-103.011(4). After filing an appeal with the Secretary's office, an inmate's only recourse for further review is "to proceed with judicial remedies." Id.

Upon review, the Court finds Corizon does not carry its burden to demonstrate Plaintiff failed to properly exhaust his

administrative remedies. The Court will deny Corizon's motion without prejudice subject to its right to reassert this defense later, with appropriate documentation.

### B. Deliberate Indifference

Second, Corizon contends Plaintiff fails to state a deliberate indifference claim. <u>See</u> Motion at 1. Corizon does not explicitly say why Plaintiff fails to state a claim, nor does Corizon directly reference Plaintiff's allegations. In fact, Corizon includes no analysis in support of its conclusory assertion; rather, Corizon sets forth pages of law (some of which is inapplicable here)[5] and then implicitly suggests Plaintiff fails to meet the minimal pleading standard:

> [Plaintiff] has two methods to plead Corizon's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Corizon. [Plaintiff] must also allege the policy was created with knowledge that his injuries were a highly probable consequence of the policy's creation.

<u>Id.</u> at 11.

Plaintiff does precisely what Corizon maintains he must: he alleges Corizon's "state-wide cost-containment policies" caused

---

[5] Corizon primarily relies upon summary-judgment case law. <u>See</u> Motion at 7-9 (discussing <u>McDowell v. Brown</u>, 392 F.3d 1283 (11th Cir. 2004)). At this juncture, Plaintiff does not have to prove Corizon's policy or custom was the moving force behind his injury; he merely must allege a policy or custom caused the injury of which he complains. This, he does.

the delay in providing the treatment he needed. See Compl. at 6. Plaintiff elaborates, "The inordinate delay and inadequate pain medication was [driven] by non-medical reasons. The drive for profitability placed the bottom line ahead of [his] health and wellbeing." Id. He also alleges Corizon refused to approve emergency transport for him and unnecessarily delayed his surgery for six months, allegedly because of cost. Id. at 5, 9.

Accepting Plaintiff's allegations as true, he states a plausible Eighth Amendment claim against Corizon. See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 705-06 (11th Cir. 1985) (holding the plaintiff stated a deliberate indifference claim against the municipality because he alleged the municipality "established or utilized a policy or custom requiring that inmates needing medical assistance obtain court orders," which resulted in a delay in necessary treatment).

District courts regularly find prisoners state plausible deliberate indifference claims when they allege medical providers base treatment decisions solely on cost-saving concerns. See, e.g., Carmichael v. Jones, No. 4:16CV238-RH/CAS, 2017 WL 2637410, at *9 (N.D. Fla. Apr. 12, 2017), report and recommendation adopted, No. 4:16CV238-RH/CAS, 2017 WL 2636492 (N.D. Fla. June 17, 2017) (finding the plaintiff stated a deliberate indifference claim against Corizon where he alleged in part that treatment decisions were driven by cost); Horn v. Jones, No. 14-20341-CIV, 2015 WL

10

3607012, at *6 (S.D. Fla. May 8, 2015), <u>report and recommendation</u> <u>adopted sub nom.</u> <u>Horn v. Crews</u>, No. 14-CIV-20341, 2015 WL 3607252 (S.D. Fla. June 8, 2015) (same); <u>Jenkins v. Manatee Cty. Sheriff</u>, No. 8:13-CV-2796-T-30, 2014 WL 105133, at *5 (M.D. Fla. Jan. 10, 2014) (same).

Plaintiff identifies a policy he alleges resulted in an unnecessary delay in medical treatment. Thus, he states a plausible claim for relief against Corizon.

Accordingly, it is now

**ORDERED:**

1.   Corizon's Motion to Dismiss (Doc. 22) is **DENIED without prejudice** subject to its right to reassert an exhaustion defense.

2.   Within **twenty days** of the date of this Order, Corizon must either answer Plaintiff's Amended Complaint (Doc. 8) or demonstrate with documentation that Plaintiff did not exhaust his administrative remedies.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of September 2020.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Robert Abbott
Counsel of Record

11