UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT ABBOTT,

        Plaintiff,

v.                                                                          Case No. 3:19-cv-642-BJD-MCR

CORIZON, LLC,

        Defendant.

_____

## **ORDER**

### I. Status

Plaintiff, Robert Abbott, an inmate of the Florida Department of Corrections (FDOC), is proceeding pro se on an amended civil rights complaint against Corizon, LLC, for alleged deliberate indifference to his serious medical needs (Doc. 8; Am. Compl.). Corizon moves for summary judgment (Doc. 46; Motion), offering the following evidence: Corizon Utilization Management records (Doc. 45-1; Def. Ex. A); FDOC medical records (Doc. 45-2; Def. Ex. B); and the declaration of an FDOC representative on the issue of exhaustion (Doc. 45-3; Def. Ex. C). Plaintiff opposes the motion (Doc. 46; Pl. Resp.), and Corizon has replied (Doc. 48).

## II. Plaintiff's Allegations

Plaintiff alleges he broke his wrist when he fell on September 22, 2015, at Union Correctional Institution (UCI). See Am. Compl. at 4-5. Plaintiff contends Corizon provided constitutionally inadequate care by unnecessarily delaying recommended surgery for six months and prescribing an "inadequate" pain medication while he awaited surgery. Id. at 6, 9. Plaintiff asserts Corizon's "state-wide cost-containment policies" are responsible for the alleged inadequate medical care. Id. at 6. He seeks compensatory and punitive damages. Id. at 8.

## III. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."


Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing

[the motion]." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### IV. Analysis

Corizon argues UCI medical records show Corizon was not deliberately indifferent to Plaintiff's serious medical needs because it authorized the medical care UCI doctors requested. See Motion at 14-15. In addition, Corizon reasserts an exhaustion defense. Id. at 15, 17. In response, Plaintiff says Corizon unnecessarily delayed his surgery for months after it had been approved, prescribed inadequate pain medication, and refused to authorize emergency treatment at the hospital. See Pl. Resp. at 8.

Plaintiff disputes the exhaustion defense on two grounds. First, Plaintiff contends Corizon waited too long to reassert the defense, and second, Plaintiff claims he gave a mailroom officer a grievance appeal on about October 16, 2015, but it "may" have been "inadvertently lost or intentionally destroyed," or it may have been misfiled by the Office of the Secretary of the FDOC. Id. at 5. He contends his requests for the mail log have been "ignored for years." Id. at 6.

Plaintiff's assertion that Corizon's exhaustion defense is untimely is without merit. The Court denied Corizon's motion to dismiss without prejudice

"subject to its right to reassert an exhaustion defense" and directed Corizon to answer the complaint or provide documentation regarding exhaustion within twenty days. See Order (Doc. 32). Corizon timely answered the complaint and asserted an exhaustion defense (Doc. 37), thereby preserving the defense for this Court's consideration.

Because exhaustion is a matter in abatement, the Court must treat the defense as if raised in a motion to dismiss. See Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). See also Maldonado v. Unnamed Defendant, 648 F. App'x 939, 951 (11th Cir. 2016) ("We treat an exhaustion defense raised in a motion for summary judgment as an unenumerated Rule 12(b) motion to dismiss."). Accordingly, the Court treats Corizon's exhaustion defense as if raised in a motion to dismiss and addresses that threshold issue first.

## A. Exhaustion

The Prison Litigation Reform Act (PLRA) provides, "No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant, 530 F.3d at 1374. See also Jones v. Bock, 549 U.S. 199, 211 (2007). While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford v. Ngo, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and

unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Nevertheless, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." See Jones, 549 U.S. at 216.

Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. Woodford, 548 U.S. at 93. Generally, to properly exhaust administrative remedies, a Florida prisoner must complete a three-step process as fully set forth in the Florida Administrative Code. See Fla. Admin. Code rr. 33-103.005 through 33-103.007. Except when grieving certain issues, including those of a medical nature, a prisoner must initiate the process by filing an informal grievance. See Fla. Admin. Code r. 33-103.005. If an informal grievance is denied, or if the prisoner wants to initiate the process to grieve a medical issue, the prisoner must file a formal grievance at the institution level. See Fla. Admin. Code rr. 33-103.005, 33-103.006. If a prisoner's formal grievance is denied, the prisoner must submit an appeal to the Office of the Secretary of the FDOC. See Fla. Admin. Code r. 33-103.007.

Courts confronted with an exhaustion defense employ a two-step process:

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by

6

> the prisoner show a failure to exhaust. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal citations omitted) (citing Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008)).

Under the first step of the exhaustion analysis, the Court accepts as true that Plaintiff submitted a grievance appeal for mailing on October 16, 2015. See id. Plaintiff does not say whether he filed grievances at the institution level, but in his response to Corizon's first motion to dismiss (Doc. 26), Plaintiff represented that he did so. If Plaintiff submitted a grievance at each step of the process, then he would have exhausted his administrative remedies. Thus, the Court proceeds to the second step of the exhaustion analysis, which requires the Court to make "specific findings to resolve disputes of fact." See Whatley, 802 F.3d at 1209. See also Bryant, 530 F.3d at 1376 (holding district courts must act as factfinders when ruling on matters in abatement, such as exhaustion).

Corizon argues Plaintiff failed to complete the third step of the grievance process, offering the declaration of Ashley Stokes, Operations and Management Consultant II at the Bureau of Policy Management and Inmate

Appeals for the FDOC. See Def. Ex. C ¶ 1. Ms. Stokes avers that a review of pertinent records shows Plaintiff "has not appealed any grievance since at least 2011." Id. ¶¶ 1, 2. In his response, Plaintiff says he gave a mailroom official a grievance appeal on October 16, 2015, and surmises it may have been lost, destroyed, or misfiled. See Pl. Resp. at 5-6.

Plaintiff provides no documentation with his response, but he previously provided the Court a copy of the October 16, 2015 grievance appeal he claims to have submitted for mailing (Doc. 26-3; Pl. Ex. B).[1] Plaintiff signed the grievance and wrote it on the proper form: DC1-303. See Fla. Admin. Code r. 33-103.007(1). In the grievance, Plaintiff complained of pain in his arm and back and said the prescribed pain medication made him sick. See Pl. Ex. B at 2. He asked for assistance obtaining "proper treatment and adequate pain medication." Id.

The parties do not dispute material facts. Plaintiff's contention that his grievance appeal was lost, destroyed, or misfiled is factually consistent with Ms. Stokes's declaration that he has not submitted a grievance appeal since 2011. Accordingly, the Court finds Corizon has not carried its burden to

---

[1] In response to Corizon's first motion to dismiss, Plaintiff provided two grievance appeals dated October 16, 2015, both of which he claims to have submitted for mailing. Only the first document, Ex. B, is relevant to Plaintiff's claim in this action. See Pl. Ex. B at 2. The other one (Doc. 26-4), Ex. C, addressed "safety hazards" at UCI.

8

demonstrate Plaintiff failed to exhaust his administrative remedies, and Corizon's construed motion to dismiss is due to be denied.

### B. Deliberate Indifference

Plaintiff alleges "Corizon's state-wide cost-containment policies" were responsible for the following alleged violations: providing Plaintiff only an ace bandage and sling on the day he broke his arm, rather than sending him to a hospital for emergency treatment; denying "timely orthopedic surgery"; and prescribing "inadequate" pain medication while Plaintiff awaited surgery. See Am. Compl. at 5-6, 10.

Deliberate indifference to an inmate's serious medical needs constitutes the unnecessary and wanton infliction of pain, which the Eighth Amendment proscribes. Estelle v. Gamble, 429 U.S. 97, 104 (1976). See also Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985) ("The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference.").

However, disputes regarding the adequacy of medical care a prisoner has received, including diagnostic testing and treatment protocols, sound in tort law. Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985). Consequently, "federal courts are generally reluctant to second guess medical

judgments." Id. (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (1st Cir. 1981) (alteration in original)). "[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting Estelle, 429 U.S. at 107).

The Eleventh Circuit has identified limited circumstances in which a prisoner may demonstrate deliberate indifference to his serious medical needs when he has received some treatment: when medical treatment is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness"; when a medical provider takes an easier and less efficacious course of treatment"; or when medical care "is so cursory as to amount to no treatment at all." Adams, 61 F.3d at 1544. Additionally, delaying necessary medical care can amount to deliberate indifference, but "the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

When a prison outsources its medical care to a private company, that company is obligated to provide constitutionally adequate medical care in accordance with Eighth Amendment principles. Ancata, 769 F.2d at 703.

10

However, a claim under § 1983 must be based on something more than a theory of respondeat superior. Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003)). Thus, to succeed, a prisoner must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978). To establish a government had a custom of permitting constitutional violations, a plaintiff must show more than a single incident of unconstitutional activity. See Grech, 335 F.3d at 1329. See also Craig, 643 F.3d at 1311 ("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality.").

The evidence Corizon offers shows Plaintiff received immediate and continuing medical care for his injuries. On the day Plaintiff fell, September 22, 2015, a nurse applied ice, cleaned and dressed a wound, prescribed a sling, gave Plaintiff Tylenol, and scheduled an x-ray, which Plaintiff had the following day. See Def. Ex. B at 51-55, 114, 368-70. A prison doctor, E. Perez-Lugo, evaluated Plaintiff on September 23, 2015. Dr. Perez-Lugo requested an orthopedic consult, applied a splint, and prescribed Lortab for pain. See Def.

11

Ex. A at 1; Def. Ex. B at 114. Corizon approved the orthopedic consult on September 28, 2015. See Def. Ex. A at 2.

Plaintiff saw an orthopedist, Dr. Steel, on October 5, 2015. See Def. Ex. B at 310. Dr. Steel recommended surgery and, the following day, Dr. Perez-Lugo submitted a request for surgery, which Corizon approved on October 7, 2015. See Def. Ex. A at 3, 5. However, Corizon canceled the surgery and directed the prison doctor to obtain "cardiac clearance" as soon as possible because of Plaintiff's age and history of atrial fibrillation with reports of chest pain, for which he was taking Coumadin daily. Id. at 7; Def. Ex. B at 304, 307. Dr. Perez-Lugo submitted a consultation request on October 7, 2015. See Def. Ex. A at 6. Corizon approved the request on October 16, 2015. Id. at 7.

A cardiologist evaluated Plaintiff on October 20, 2015, and ordered tests. See Def. Ex. B at 308. Three days later, Dr. Perez-Lugo requested approval for those tests. See Def. Ex. A at 9. Corizon approved the request on October 27, 2015. Id. at 11-12. Plaintiff had a stress test on November 3, 2015, and an echocardiogram on November 16, 2015. Id. at 13; see also Def. Ex. B at 18.

At least three UCI doctors received and reviewed the stress test results but not until about two months later. Dr. S. Bongo reviewed the results on December 28, 2015, see Def. Ex. A at 13-14; Dr. Perez-Lugo reviewed them on January 12 or 14, 2016, see Def. Ex. B at 22-23, 33; and Dr. James S. Miliken

12

reviewed them on January 27, 2016, id. at 20. On January 20, 2016, Dr. Bongo submitted a request for a follow-up appointment with the orthopedist, noting Plaintiff had been cleared for surgery. See Def. Ex. A at 15; Def. Ex. B at 33, 304. Corizon approved surgery on February 17 or 18, 2016, and Dr. Steele performed surgery on March 1, 2016. See Def. Ex. A at 16, 18-20.

While Plaintiff was awaiting surgical approval, he received continuing treatment. On October 31, 2015, Plaintiff declared a medical emergency and asked when his tests and surgery would be scheduled. See Def. Ex. B at 47. He was evaluated on November 1, 2015, and a nurse explained to him that diagnostic tests had been ordered. Id. at 46. On November 29, 2015, Plaintiff requested an evaluation for a pain medication that would not make him sick, and he reported increased pain. Id. at 42. The nurse documented the following plan of care: Plaintiff was to continue using his sling, and an appointment was to be made with the "provider to evaluate pending surgical procedure, [increased] pain and requesting eval for pain med that won't make him sick." Id.

On December 7, 2015, Plaintiff had a follow-up appointment with a UCI doctor. Id. at 40. The doctor's handwriting is difficult to read, but there appears to be reference to a pain medication and the pharmacy. Id. On December 26, 2015, Plaintiff had another follow-up appointment, and he asked whether his

13

pain medication was safe to take with Coumadin. Id. at 38. Plaintiff also complained of increased back pain. A nurse noted he was "pending surgery" and recommended an evaluation to determine whether a back x-ray was necessary. Id.

On January 9, 2016, Plaintiff submitted a sick-call request, complaining that Dr. Bongo refused to order an x-ray for his back and right hip, allegedly because Plaintiff was awaiting surgery. Id. at 34. A nurse evaluated Plaintiff's back and hip on January 12, 2016. The nurse requested an x-ray, and noted Plaintiff was already taking pain medication. Id. at 36, 106. Dr. Perez-Lugo ordered x-rays of Plaintiff's lumbar spine and hip on January 12, 2016, and Plaintiff had an x-ray on January 15, 2016. Id. at 366-67. Dr. Perez-Lugo ordered repeat back and hip x-rays after Plaintiff had his surgery. Id. at 363-65. An April 6, 2016 lumbar spine x-ray showed degenerative changes, and the hip x-ray was normal. Id. at 363-64.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Corizon has carried its burden on summary judgment. More specifically, Corizon demonstrates by reference to the record that there are no genuine issues of material fact to be determined at trial. See Clark, 929 F.2d at 608. The medical records reflect Corizon authorized all medical care prison doctors requested, including specialist consultations and surgery. Plaintiff offers no

14

evidence in opposition to Corizon's motion, saying he could not prepare a memorandum of law because his access to the law library was restricted. See Pl. Resp. at 7. However, on summary judgment, Plaintiff may not rely on the unsubstantiated allegations in his complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves."). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).

The Court previously advised Plaintiff that a party opposing a motion for summary judgment "may not depend upon mere allegations in his pleadings," but rather must respond with evidence showing a genuine issue of material fact in dispute. See Order (Doc. 9). Plaintiff did not request an extension of time to respond to Corizon's motion for summary judgment, and he does not say what more he would have provided had he had access to the law library. Regardless, what Plaintiff lacks is not legal authority but evidence supporting his allegation that Corizon consistently denied inmates constitutionally adequate medical care for cost-saving reasons. Even if he had such evidence, however, the medical records show that Corizon authorized the treatment he required for the injuries he sustained on September 22, 2015.

15

In other words, the evidence belies Plaintiff's allegation that Corizon denied necessary, recommended medical treatment for non-medical reasons. In fact, Corizon approved all medical care doctors requested for Plaintiff between the date of his injury and the date of his surgery. There is no evidence suggesting the care Plaintiff received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris, 941 F.2d at 1505.

Plaintiff's subjective belief that he should have been sent to the emergency room on the day he fell "is not an appropriate basis for grounding liability under the Eighth Amendment." See Adams, 61 F.3d at 1545. Such a decision is one for medical providers. Similarly, whether to prescribe a particular or different pain medication is a medical judgment not subject to Eighth Amendment scrutiny. Moreover, accepting as true that Lortab bothered Plaintiff's stomach, there is no indication a nurse or doctor requested Corizon authorize a different pain medication for Plaintiff, or, if a request was submitted, that Corizon denied it.

Finally, as to Plaintiff's surgery, there was an initial delay scheduling it, but that delay was for medical reasons: to obtain a cardiology consult given Plaintiff's medical history. If anything, such a decision suggests the opposite of deliberate indifference. Notably, the cardiologist advised that the surgery

16

would be safest if Coumadin was stopped three days before the surgery. See Def. Ex. A at 15. Accepting that Plaintiff's surgery was delayed between mid-November, when the cardiac tests were completed, and mid-February, when Corizon approved surgery, there is no evidence showing Plaintiff's surgery was delayed for cost-saving reasons and, even if it was, that Corizon had a custom of permitting constitutional violations.[2]

For the above reasons, Corizon's motion for summary judgment is due to be granted.

## V. Plaintiff's Motion for Return of Funds

Also before the Court is Plaintiff's motion requesting a refund for an alleged overpayment of the filing fee (Doc. 49; Pl. Motion). Plaintiff provides no supporting documentation. He merely contends as follows: "On or about [February 10, 2021,] the inmate bank sent this Court a check for $120.00. Subsequently, that agency sent another $216.00 check. Considering all other monthly payments sent the Court, this resulted in overpayment of $96.00." See Pl. Motion at 2.

A review of the docket shows the Court received the following payments from Plaintiff in full satisfaction of the $350.00 filing fee: $10.00 on September

---

[2] To the extent Plaintiff also complains that his back and hip pain were ignored, the evidence shows the contrary. His complaints were recorded, and he was evaluated and treated. Dr. Perez-Lugo even ordered two sets of x-rays.

17

23, 2019; $10.00 on December 17, 2019; $54.00 on February 4, 2020; $30.00 on June 18, 2020; $10.00 on July 27, 2020; $10.00 on September 1, 2020; $10.00 on November 3, 2020; and $216.00 on June 15, 2021. The Court did not receive a check for $120.00 in February 2021. There is no record of the Court receiving more than $350.00 in satisfaction of the filing fee. As such, Plaintiff's motion is due to be denied.

Accordingly, it is now

**ORDERED:**

1. Defendant's construed motion to dismiss for Plaintiff's failure to exhaust his administrative remedies (Doc. 46) is **DENIED**.

2. Defendant's motion for summary judgment (Doc. 46) is **GRANTED**, and Plaintiff's claims are **dismissed with prejudice**.

3. Plaintiff's motion for return of funds (Doc. 49) is **DENIED**. The **Clerk** is directed to send Plaintiff a copy of the docket.

4. The **Clerk** is directed to enter judgment dismissing the case with prejudice, terminate any pending motions as moot, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of August, 2021.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Robert Abbott
Counsel of Record